**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**JAMES CHAVEZ,**

        **Plaintiff,**

**vs.**                                     **Civ. No. 10-205 JCH/ACT**

**JOHN STOMP, Individually and**
**in his Official Capacity as an employee**
**and supervisor of CITY OF ALBUQUERQUE**
**WATER UTILITY AUTHORITY, and the**
**CITY OF ALBUQUERQUE, A MUNICIPALITY,**
        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's *Motion for Attorneys' Fees and Memorandum in Support of Motion for Attorneys' Fees.* [Doc. No. 96, filed 1/9/13] Defendants filed a Response. [Doc. No. 98, filed 1/28/13].

Plaintiff requests a total award of $58,661.00: (1) $57,892.00 for 257.3 hours at an hourly rate of $225.00; plus (2) $768.50 in expenses.

The Court has reviewed the pleadings and the relevant law. The Court concludes that the Motion should be granted, but reduces the award as discussed below.

**BACKGROUND**

Plaintiff, a Hispanic male, worked for almost twelve years as a Senior Engineer; originally his employer was the City of Albuquerque, which later transitioned into the Water Authority. [Doc. No. 95, pp. 21, 28, 119] At the time of trial Plaintiff was still employed by the Water Authority, still as a Senior Engineer—the same job level at which he was hired eleven

years earlier.  [Doc. No. 95, p. 191]  Defendant Stomp became Plaintiff's supervisor in 2001.  [Doc. No. 95, pp. 27-28]

According to Plaintiff, he was experiencing success in his employment, but then things changed.  After a sequence of events in Fall 2003, Plaintiff testified, he noticed that he was being relieved of responsibility and he was not being invited to project progress meetings anymore; it became obvious that he was being isolated and marginalized.  [Doc. No. 95, p. 33]  He testified that he believed that these changes occurred as a result of that sequence of events in Fall 2003, when Defendant Stomp made religious advances, which Plaintiff rejected.  [Doc. No. 95, p. 34]

Between December 2005 and January 2009, Plaintiff testified, he applied for many promotions:  to Principal Engineer, Chief Engineer, and Program Manager.  [Doc. No. 95, pp. 50-74, 113]   Plaintiff testified at length about the positions and the qualifications of the successful candidates; he compared his qualifications and testified that for most of the positions, he felt he was at least as qualified as the successful candidates.  [Doc. No. 95, pp. 50-78, 92, 96]  Plaintiff testified that he believed that less qualified non-minority candidates were selected over Plaintiff.  [Doc. No. 95, pp. 83-85]  He also testified that he believed he had been discriminated against on the basis of his religious beliefs, because Defendant Stomp had considerable rank and influence and Plaintiff had rejected Stomp's religious values and "his repeated admonishment to accept Christ."  [Doc. No. 95, pp. 85-86]

Plaintiff testified that his current salary was $74,500 a year, after a 25% increase in 2010 in which he received an "equity adjustment" because his salary was below the minimum.  [Doc. No. 95, p. 87]  Plaintiff testified that a Chief Engineer's salary started "at six figures," and one he knew of was hired at $105,000.  [Doc. No. 95, p. 88]  He testified that in 2006 the salary ranges for a Principal Engineer and Chief Engineer were about $40,000 and about $50,000 more than

the $45,000 he was receiving as a Senior Engineer, and that when his salary was increased those salaries increased a comparable amount.  [Doc. No. 93, pp. 48-49]

The Complaint stated three separate claims against the Water Authority and John Stomp: (1) Count I: racial discrimination under Title VII of the Civil Rights Act; (2) Count II: religious discrimination under Title VII; and (3) Count III: retaliation based on exercise of First Amendment rights under § 1983.  [Doc. No. 14, filed 12/23/10]  The Court granted partial summary judgment on Count III in favor of the Water Authority and Stomp in his official capacity as an employee; the Court ruled that Count III remained as a claim against Stomp in his individual capacity.  [Doc. No. 45, filed 1/4/12]  Counts I and II were against the Water Authority and Stomp in his official capacity.

District Judge Eginton, Sitting by Designation, presided over the jury trial held on August 20, 2012, to August 23, 2012.  The jury found in favor of Defendants on Counts I and II.  [Doc. No. 90]  The jury found in favor of Plaintiff on Count III, awarding $180,000 in compensatory damages and $100,000 in punitive damages.  [Doc. No. 90]

## LEGAL STANDARDS

The Civil Rights Attorney's Fees Awards Act provides that the district court has discretion to allow the "prevailing party" in a § 1983 action a "reasonable attorney's fee."  42 U.S.C. § 1988(b).  A plaintiff is a prevailing party if he succeeds on any significant issue which achieves some of the benefit sought in the suit.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The district court's power to award attorneys' fees is discretionary, but "that discretion is narrow once a civil rights plaintiff demonstrates that he is a 'prevailing party.'"  *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (quoting *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997)).  A prevailing plaintiff ordinarily should recover attorneys' fees.  *Hensley*,

461 U.S. at 429.  "The implication of our cases is that when a plaintiff prevails in a civil rights suit, the plaintiff ordinarily should not have his vindication of these rights eviscerated by an obligation to pay his attorney's reasonable fees."  *Robinson*, 160 F.3d at 1280.

Congress enacted § 1988 to ensure that federal rights are adequately enforced.  *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010).  "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights."  *Id.* at 559.  And a plaintiff who succeeds in remedying a civil rights violation serves "as a private attorney general, vindicating a policy that Congress considered of the highest priority."  *Fox v. Vice*, ___ U.S. ___, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011).  Congress's purpose in enacting § 1988 "was not to give private lawyers an unwarranted windfall, but rather to ensure compensation adequate to attract competent counsel."  *Robinson*, 160 F.3d at 1281 (internal quotation marks omitted).  If awards of attorney fees are not adequate to match what an attorney could command in the market, competent lawyers will avoid taking on civil rights lawsuits, frustrating our system of private enforcement of federal civil rights.  *Id.*

The district court must address two issues:  (1) whether the claimant was a "prevailing party"; and (2) whether the fee request is "reasonable."  *Robinson*, 160 F.3d at 1280 (quoting *Hensley*, 461 U.S. at 433).

To determine whether a fee request is "reasonable," the court begins by calculating the "lodestar amount" of a fee.  The lodestar approach is "the guiding light" of the federal courts' fee-shifting jurisprudence.  *Perdue*, 559 U.S. at 551 (internal quotation marks omitted); *see Anchondo v. Anderson, Crenshaw & Assocs.*, 616 F.3d 1098, 1103-04 (10th Cir. 2010) (observing that lodestar determination is primary approach under Supreme Court cases, including *Hensley* and *Perdue*); *Robinson*, 160 F.3d at 1281 (stating that district court must begin with

lodestar amount).  There is a strong presumption that the lodestar method produces a reasonable fee.  *Perdue*, 559 U.S. at 552.  The lodestar method is intended to produce "an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551 (emphasis in original); *see id.* at 556 (observing that lodestar approach is intended to provide "rough approximation of general billing practices").  The purpose is "'to simulate the market where a direct market determination is infeasible.'"  *Robinson*, 160 F.3d at 1281 (quoting *Steinlauf v. Cont'l Illinois Corp.*, 962 F.2d 566, 572 (7th Cir. 1992)).  The lodestar calculation generally subsumes the factors of the complexity of the case and the quality of the attorney's performance—with the former reflected in the number of billable hours found reasonable, and the latter in the hourly rate found reasonable.  *Perdue*, 559 U.S. at 553-54.

The lodestar amount is a "'reasonable hourly rate'" multiplied by the number of attorney hours "'reasonably expended.'"  *Robinson*, 160 F.3d at 1281 (quoting *Hensley*, 461 U.S. at 433).  The lodestar looks to "'the prevailing market rates in the relevant community.'"  *Perdue*, 559 U.S. at 551 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  The claimant has the burden of showing that the hourly rate and number of hours claimed are reasonable; if the claimant carries that burden, the amount is presumed to be a reasonable fee under § 1988.  *Id.*  Attorneys seeking fee awards are required to keep meticulous, contemporaneous time records and to demonstrate the reasonableness of each dollar and each hour claimed.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

In determining whether the hours claimed are reasonable, the district court must consider whether the hours were "necessary" under the circumstances.  *Id.*  The purpose is to determine "what hours a reasonable attorney would have incurred and billed in the marketplace under

similar circumstances." *Robinson*, 160 F.3d at 1281; *see Burch v. La Petite Acad. Inc.*, 10 Fed. Appx. 753, 755 (10th Cir. 2001) (unpublished).  The applicant must make a good faith effort to exclude hours that are excessive, redundant, or otherwise unnecessary.  *Hensley*, 461 U.S. at 434.

## DISCUSSION

Plaintiff claims that he should be compensated at an hourly rate of $225.00 for 257.3 hours, or $57,892.50, plus expenses of $768.50—for a total award of $58,661.00.  Plaintiff attaches an "Out-of-Court Hourly Worksheet," an "In-Court Hourly Worksheet," and an "Expense Worksheet."  [Docs. No. 96-1, 96-2, 96-3]

Defendants argue that Plaintiff's claimed hourly rate is too high.  Defendants also argue that Plaintiff's claimed number of hours is not reasonable; this argument is based on Defendants' contention that the lodestar amount should be reduced for limited success.  Defendants concede that Counts II and III are sufficiently related that Plaintiff "could reasonably claim that there was a significant overlap in time spent on his unsuccessful Title VII religious-discrimination and his successful § 1983 religious-retaliation claim," but argue that Plaintiff should not recover attorney fees for time spent on the claim of racial discrimination.  [Doc. No. 98, pp. 3-4]  Defendants contend that Plaintiff has failed to carry his burden of demonstrating entitlement to any award because he makes no effort to separate time spent on the unsuccessful claim, therefore failing to show that his request is reasonable.  [Doc. No. 98, p. 4]  Alternatively, Defendants ask the Court to reduce the hours by 50% "to reflect the reality that there were two main issues in this case (race and religion), and Plaintiff only prevailed on one."  [Doc. No. 98, pp. 4-5]

## I. Prevailing Party

Although the jury decided for Defendants on Counts I and II, Plaintiff was awarded a total of $280,000 in damages on Count III.  Defendants do not argue that Plaintiff does not qualify as a "prevailing party."

Plaintiff succeeded on a significant issue and achieved some of the benefit sought in his suit.  *See Hensley*, 461 U.S. at 433.  The Court concludes that Plaintiff is a "prevailing party" and that the Court has discretion to allow Plaintiff a "reasonable attorney's fee" under § 1988.

## II. Reasonable Fees

### A. Lodestar amount

#### 1. Hourly rate

Ordinarily, the Court would review the relevant experience of Plaintiff in similar cases and compare his experience to local market rates for attorneys with similar levels of experience.  *See Burch*, 10 Fed. Appx. at 755.  Factors considered in this determination include the level of experience and the quality of the attorney's performance.  *Perdue*, 559 U.S. at 553-54.  It was Plaintiff's burden to show that his counsel's claimed hourly rate was reasonable.  *See Robinson*, 160 F.3d at 1281.  Plaintiff's counsel, however, has failed to provide the Court with information on his experience in civil cases of this type and his usual hourly rate; even after Defendants' Response observed that Plaintiff's Motion referred to an affidavit which was not attached, Plaintiff failed to file a reply or to file that affidavit with the Court.  The Court is aware that Plaintiff's counsel has been in practice for many years, but he has provided no evidence of his experience in civil cases of this type.  The amount of experience in civil cases of this type is a better indicator of a reasonable hourly rate than mere number of years since admission to the bar.  Attorneys working outside their fields of expertise may deserve a lower hourly fee than their

normal billing rate. *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1257 (10th Cir. 1998). The Court may also consider the quality of the attorney's performance in the case. *See id.*

Plaintiff's Motion seeks an hourly rate of $225.00, and cites determinations from courts in this district that rates between $150.00 and $250.00 are reasonable. [Doc. No. 96, p. 3] Defendants argue that $180.00 would be an appropriate and reasonable rate, citing awards ranging between $150.00 and $210.00. [Doc. No. 98, pp. 5-6] Courts in this district have made awards ranging from $150.00 to $350.00. *See In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1257 n.41 (D.N.M. 2012). In view of Plaintiff's counsel's failure to provide a resume or other indication of his experience in similar cases, the Court concludes that $210.00 is a reasonable hourly rate.

### 2. Hours expended

Defendants argue that the number of hours claimed by Plaintiff's counsel is not reasonable, but confine their argument to a claim that there should be a reduction for limited success—the issue addressed after the lodestar amount is calculated. Defendants do not otherwise challenge any of the specific hours claimed in Plaintiff's Motion.[1]

Some entries in Plaintiff's counsel's "Out-of-Court Hourly Worksheet" appear to claim for clerical or paralegal tasks, or to combine both types of task. A court may "discount requested attorney hours" if the attorney's records fail to definitively show how those hours were spent. *Robinson*, 160 F.3d at 1281. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

---

[1] The Court notes that Plaintiff's fee application covers time spent by previous counsel in addition to time spent by Plaintiff's current counsel. Plaintiff has not provided information on the situation, but Defendants have made no objection. Under these circumstances, the Court will not address this issue.

Plaintiff's counsel fails to include argument or authority that he is either allowed under §

1988 or customary practice to bill for clerical work rather than absorbing such time as overhead.

*Cf. Robinson*, 160 F.3d at 1284 (observing that when party seeks to have opponent pay for his

attorney's work it is "particularly important" that billing practice justify the claimed time).  One

of the factors to be considered is whether the tasks being billed "'would normally be billed to a

paying client.'"  *Id.* at 1281 (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983),

*overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean

Air*, 483 U.S. 711, 725 (1987)).  Even if billing for clerical work were appropriate, it would not

be reasonable to bill at an attorney's regular hourly rate for clerical or administrative tasks,

including serving and filing of papers.  *Id.*; *see Davis v. City of San Francisco*, 976 F.2d 1536,

1543 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).  Tasks that

do not require the legal skill of an attorney or paralegal do not justify compensation at an

attorney's hourly rate:

> Of course, purely clerical or secretarial tasks should not be billed at a
> paralegal rate, regardless of who performs them.  What the court in *Johnson v.
> Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (CA5 1974), said in regard to
> the work of attorneys is applicable by analogy to paralegals:  "It is appropriate to
> distinguish between legal work, in the strict sense, and investigation, clerical work,
> compilation of facts and statistics and other work which can often be
> accomplished by non-lawyers but which a lawyer may do because he has no other
> help available.  Such non-legal work may command a lesser rate.  Its dollar value
> is not enhanced just because a lawyer does it."

*Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989).

Some entries in Plaintiff's counsel's time records combine time for clerical and legal tasks.

There are many entries for "Rec & rev"—entries which appear to combine an appropriately legal

task (reviewing the content of a document) and a clerical task (receiving or filing a document).

Sometimes the "Rec & rev" entry is for time spent on the "physical copy" of a document when

there is also a prior entry for "Rec & rev" of an electronic copy of that document.  Once the attorney has reviewed the electronic copy, there is no justification for the attorney to again claim attorney time for reviewing the physical copy of that same document; checking and filing the physical copy then constitutes merely a clerical task.  Other entries of a clerical nature include, e.g.:  drafting and filing via CM/ECF a notice of unavailability or return of service, forwarding to the client a notice of the judge assignment, and hand delivering documents to opposing counsel. To bill at an attorney's hourly rate for such tasks is not consistent with the obligation to exercise billing judgment.  The Court is not intended to comb and study every entry in counsel's time records, or to become a "green eyeshade accountant."  *See Fox v. Vice*, ___ U.S. ___, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011).  Rather than attempt to identify each portion of each entry that might constitute clerical work, the Court will instead simply reduce the number of hours claimed to remove claims for clerical tasks.  *See id.* (stating that the district court may use estimates in calculating attorney time).  The Court estimates that six hours are claimed for clerical tasks.

In contrast to clerical tasks, it is reasonable to bill for the work of paralegals.  *See, e.g.*, *Ramos*, 713 F.2d at 558-59 (observing that even at that time, it was becoming increasingly widespread to separately bill clients for services of paralegals).  For tasks billed by Plaintiff's counsel that the Court concludes constitute work that could be performed by paralegals, the Court will allow compensation but at a reasonable paralegal's hourly rate of $75.  The Court estimates that five hours of Plaintiff's counsel's claimed hours constitute paralegal time.

The Court deducts one hour to prepare the affidavit by Juarez which was apparently intended to be submitted with the Motion for attorney fees, but which was not attached to the Motion.

The Motion claims full payment for 6.5 hours of waiting while the jury was deliberating. [Doc. No. 93, pp. 175-181 (jury sent out at 4:20 p.m. on 8/22/12, then sent home for the night); Doc. No. 94 (jury deliberating from 8:30 a.m. to 4:09 p.m. on 8/23/12)]  The Court concludes, however, that Juarez could use this time for other work and that payment for half of this time is reasonable.  The Court therefore subtracts 3.25 hours.

The Court notes that Plaintiff's counsel makes eight claims of 2.5 hours of travel time to and from home to court for settlement conferences or trial, and one claim of 0.5 hours for unclear "travel time to and from court" (on 1/31/11), for a total of 20.5 hours.  Plaintiff provides no documentation or support that it is customary for an attorney to charge a client for travel from the attorney's home to his office or from home to court, or that such travel time or mileage is otherwise properly allowed.  *See Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990) (observing that court should consider what travel costs are normally billed to a private client in the locality and whether costs are reasonable).  Plaintiff's counsel has not even presented his own affidavit on whether he normally charges private clients for such travel expenses.  The Court concludes that travel time and mileage from Plaintiff's counsel's office to the Albuquerque Courthouse is allowable, but travel time and mileage from his home to his office constitutes personal commuting time and expense and is not generally allowed as a business charge or deduction.  *Cf. IRS Publication 463*, chap. 4 (2012), available at www.irs.gov/publications/p463/ch04.html (last visited 12/28/13) (providing that transportation expenses from home to regular place of business is not deductible business expense, but is rather personal commuting expense); *Ramos,* 713 F.2d at 559 (implying, without deciding, that when travel expenses are allowed they would be from attorney's office (not home)).  Plaintiff's pleadings show his counsel's regular business address as 1822 Lomas Blvd. NW, Albuquerque,

which is a distance of 1.2 miles from the Albuquerque Courthouse where proceedings were held. The Court will allow 5 minutes travel time each way for 9 roundtrips, or a total of 1.5 hours.  To this 1.5 hour allowance, the Court adds the 0.6 hours claimed for hand delivery of discovery requests on 5/31/11, for a total travel time of 2.1 hours (instead of the 21.1 hours of travel time claimed).

In addition, the Court concludes that an hourly rate of $210 per hour for travel time is excessive.   Driving time may be compensated at a reduced hourly rate because "while necessary," it is "essentially unproductive" and "'no compensation is due for nonproductive time.'"  *Smith*, 921 F.2d at 1122 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)) (affirming award of 25% of attorney's hourly rate for driving time); *see Adusumelli v. Steiner*, 2013 WL 1285260, *5 (S.D.N.Y. 2013) (stating that travel time is not as productive as time spent in office or court and that courts in the Second Circuit therefore regularly reduce hourly rate for travel time by 50%) .  The Court concludes that the rate of $105.00 per hour, 50% of Plaintiff's counsel's reasonable hourly rate, is a reasonable rate for travel time.  *See McDonald v. Armontrout*, 860 F.2d 1456, 1462-63 (8th Cir. 1988) (allowing 50% of hourly rate for travel time); *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1161 (2d Cir. 1994) (indicating that 50% of hourly rate for travel time is reasonable); *Wirtz v. Kansas Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1199 (D. Kan. 2005) (allowing 50% of attorney's hourly rate for travel time).

The total allowed for travel time is $220.50 (2.1 hours at $105 per hour).  Plaintiff's counsel claimed $4,747.50 (21.1 hours at $225 per hour).  The Court will therefore deduct $4,527.00 from Plaintiff's requested award.

The Court has carefully reviewed Plaintiff's time records and concludes that the number of hours expended, with the exceptions discussed above, is reasonable in view of the complexity and issues of this case.  *See Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996).

### 3.  Calculation of lodestar amount

The Court finds that the number of hours reasonably expended is 220.95.  At Plaintiff's counsel's reasonable hourly rate of $210.00, the product is $46,399.50.  The Court has subtracted 5 hours for paralegal tasks, but will compensate Plaintiff for those hours at an hourly rate of $75.00, for additional compensation of $375.00.  The Court has allowed 2.1 hours of travel time at the hourly rate of $105.00, for additional compensation of $220.50.  The total lodestar amount is $46,995.00.

### B.  Reduction for limited success

Defendants argue that Plaintiff is not entitled to recover fees related to his unsuccessful Title VII claims.  Defendants concede that Plaintiff "could reasonably claim that there was a significant overlap in time spent on his unsuccessful Title VII religious-discrimination and his successful § 1983 religious-retaliation claim, [but argue] that is not true with respect to Plaintiff's racial discrimination claim."  [Doc. No. 98, p. 3]  Because Plaintiff's counsel has not separated time spent on the racial discrimination claim from time spent on the religious claims, Defendants argue that Plaintiff failed to carry his burden of showing that his requested fees are reasonable and that the Court should deny any award of attorneys' fees.  [Doc. No. 98, p. 4]  In the alternative, Defendants ask the Court to "reduce the hours forming the basis of Plaintiff['s] request for fees by 50% to reflect the reality that there were two main issues in this case (race and religion), and Plaintiff only prevailed on one."  [Doc. No. 98, p. 5]

In *Hensley*, the Supreme Court held that, after calculating the lodestar amount, a court should consider whether there are reasons to adjust the fee upward or downward. *Hensley*, 461 U.S. at 434. One of the critical factors is the "results obtained," which is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* The court should compensate a plaintiff for the time his attorney spent in achieving a favorable outcome, but should not compensate for "work performed on claims that bore no relation to the grant of relief"; such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Vice*, 131 S. Ct. at 2214. The court must then address two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434.

If the lawsuit involves "distinctly different claims for relief that are based on different facts and legal theories," the attorney's work on one claim is unrelated to work on another claim; work on the unsuccessful claim cannot then be deemed to have been carried out in pursuit of the result obtained. *Id.* at 434-35. "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 435. In contrast, if the claims involve "a common core of facts" or are "based on related legal theories," much of the attorney's time "will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* "Such a lawsuit cannot be viewed as a series of discrete claims," and the district court should instead "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Id.*

The Supreme Court emphasized:  "The result is what matters."  *Id.*  When the plaintiff obtains "excellent results" on related claims, his attorney should recover "a fully compensatory fee" which normally will include compensation for all reasonable hours spent.  *Id.*  "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Id.*  But when a plaintiff obtains "only partial or limited success," the lodestar amount may be excessive.  *Id.* at 436.  "Again, the most critical factor is the degree of success obtained."  *Id.*  Instead of "following a claim-by-claim success basis, under § 1988 the focus should be on the 'significance of the overall relief obtained by [the] plaintiff in relation to the hours reasonably expended on the litigation.'"  *Id.* at 435.

"There is no precise rule or formula for making these determinations."  *Id.*  *Hensley* approves of the district court either reducing the award by eliminating specific hours, or simply reducing the award to account for the limited success.  *Id.* at 436-37.  This is an equitable judgment, on which the district court necessarily has discretion.  *Id.* at 437.

In *Robinson*, the Tenth Circuit addressed the issue of reduction of the lodestar amount for limited success.  The plaintiffs in *Robinson* (after an appeal) had succeeded in their principal goal of removing the Latin cross from the City of Edmond's official seal on the basis of the Establishment Clause.  *Robinson*, 160 F.3d at 1279, 1282.  The district court, however, concluded that a reduction in attorneys' fees was warranted because the plaintiffs did not succeed on three other claims:  the Free Exercise Clause claim, the claim for individual-capacity liability against city officials, and the claim for actual damages beyond nominal damages.  *Robinson*, 160 F.3d at 1282-83.  The Tenth Circuit reversed, holding that these unsuccessful claims were "intertwined with the successful claims through a common core of facts or related legal theories."  *Id.* at 1283.  The principle is that a plaintiff should be allowed "breathing room" to raise

alternative legal grounds without risking a cut in the attorneys' fees when success is achieved, but only based on one alternative. "Instead, a court should focus on the 'significance of the overall relief' that the prevailing party has won: 'The result is what matters.'" *Id.* (quoting *Hensley*, 461 U.S. at 435). When a plaintiff raises a number of alternative interrelated claims and achieves the principal goal of the lawsuit, lack of success on some of those interrelated claims may not be used to reduce the attorneys' fee award; the attorney should receive a "'fully compensatory fee.'" *Id.* (quoting *Hensley*, 461 U.S. at 435). "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

In *Jane L.*, the Tenth Circuit affirmed the district court's 35% reduction of attorneys' fees because the plaintiffs' "rather sloppy and imprecise time records" did not show how the attorneys spent large blocks of time. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). "'Where the documentation of hours is inadequate, the district court may reduce the award accordingly.'" *Id.* (quoting *Hensley*, 461 U.S. at 433). The district court had also reduced the lodestar amount by 75% for limited success, when the plaintiffs prevailed in district court on two of eight challenges to various parts of Utah's Abortion Act; reversing on the merits, the Tenth Circuit necessarily reversed this reduction and also disapproved of any mathematical reduction for limited success (observing that the 75% reduction corresponded to the percentage of unsuccessful issues). *Id.* at 1511. The Tenth Circuit emphasized that *Hensley* requires a district court to make a qualitative assessment of the relative importance of the claims when a plaintiff achieves success on only some of the claims brought; a mechanical weighing of successful and unsuccessful claims is not appropriate. *Id.* The district court must focus on the significance of the overall relief in relation to the hours reasonably expended. *Id.* (citing *Hensley*, 461 U.S. at 435).

The plaintiffs in *Jane L.* made four alternative arguments in challenging the Utah Act's pre-20-week ban on abortions.  Although three arguments were unsuccessful, the Tenth Circuit held that the unsuccessful equal protection, First Amendment, and involuntary servitude claims were related to the successful due process claim so that there should be no reduction for limited success; the one successful claim achieved the plaintiffs' primary purpose of invalidating the pre-20-week ban.  *Id.* at 1511-12.  These four theories were based on a "common core of facts" and were "related legal theories" so that success on one claim precluded reduction of the lodestar on the basis of the three unsuccessful related theories.  *Id.*

In contrast, the Tenth Circuit affirmed the district court's conclusion that other claims in *Jane L.* were unrelated to the successful claim, so that reduction of the lodestar amount for limited success was appropriate.  *Id.*  The plaintiffs also challenged the Utah Act's provisions on: serious medical emergency, spousal notification, and fetal experimentation.  The Tenth Circuit agreed with the district court that these claims were unrelated to the successful due process challenge to the pre-20 week ban.  These claims did not concern a "common core of facts" simply because they were all included in the Utah Abortion Act; these claims involved different substantive issues and legal theories unrelated to the pre-20 week ban.  *Id.* at 1512-13.  The Tenth Circuit therefore concluded that the district court properly reduced the lodestar amount when the plaintiffs did not succeed on these claims in district court.  *Id.* at 1513.  (Since the Tenth Circuit reversed the district court on the substantive issues, however, the district court was required to reconsider any reductions for lack of success on remand.)

In *Tidwell*, the Tenth Circuit refused to allow a reduction in attorneys' fees for a plaintiff who prevailed on an Equal Pay Act claim but was unsuccessful on her Title VII claim.  *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412-13 (10th Cir. 1993).  Both claims depended on the

allegation that the female plaintiff was paid less than males who had held the same job. *Id.* at 409-10. On her successful Equal Pay Act claim, the plaintiff obtained two years of back pay. *Id.* at 408. Applying *Hensley*, the Tenth Circuit held that the district court erred in reducing the plaintiff's attorneys' fees award. *Id.* at 412. Although she had been unsuccessful on one claim, the plaintiff had "succeeded on the significant issue of rectifying her past pay disparity." *Id.* at 412. There was "one bundle of proof" and "no way to separate the work on the core issue." *Id.* The Tenth Circuit thus held that the plaintiff was entitled to be "fully compensated" for all attorneys' fees. *Id.*; *see also Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1119-20 (10th Cir. 2001) (holding that false imprisonment under Kansas law and § 1981 claim were both based on same "bundle of evidence" when store clerk detained plaintiff, so that plaintiff who received $56,000 in compensatory damages and $1.1 million in punitive damages had achieved substantial success and should receive fully compensatory attorney fee award, even though her state law claim and some § 1981 claims were unsuccessful).

The Court agrees with Defendants' concession that the Title VII discrimination and § 1983 retaliation claims are "related" for purposes of § 1988, since both counts are based on interference with religious freedom. *See, e.g., Waldo v. Consumers Energy Co.*, 726 F.3d 802, 823 (6th Cir. 2013) (treating as "related" the plaintiff's claims of discrimination, retaliation, harassment, and hostile work environment—all related to hostility based on gender); *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 35-36 (1st Cir. 2012) (treating as "related" the claims of retaliation and discrimination, both related to age). Plaintiff did obtain a significant level of success with respect to these related claims; if these were the only claims made, Plaintiff would therefore be eligible for a "fully compensatory" award, for all hours reasonably expended.

But Plaintiff also made a racial discrimination claim, on which he was unsuccessful. Based on review of the caselaw, the Court concludes that the claim of racial discrimination is not "related" to the other claims, and that there should be a 10% reduction in Plaintiff's attorney fee award for limited success.

It is true that the racial discrimination claim is based on some of the same facts: the history of unsuccessful job applications. The racial discrimination claim, however, depended on a critical allegation of a very different fact—that promotions were denied by the Water Authority and Stomp in his official capacity because of racial discrimination. Plaintiff thus presented a significant amount of testimony on racial discrimination through two of his three witnesses. Plaintiff Chavez testified about the ethnicity of the successful applicants for promotion, with respect to each of the positions for which Chavez applied. The testimony of Plaintiff's second witness, David Montgomery, was largely directed to the racial discrimination allegation. Plaintiff's counsel claimed 2.5 of his hours preparing a brief requested by Judge Eginton on the "stray remarks" issue, which was relevant only to the racial discrimination claim. [Doc. No. 96-1, p. 8] Although there was a substantial overlap of testimony and attorney time—that devoted to other aspects of the unsuccessful applications for promotion—the record shows that there was "work performed on claims that bore no relation to the grant of relief," which "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Vice*, 131 S. Ct. at 2214. There was not just one "bundle of proof," as in the cases holding that claims were related.

The Court concludes that the racial discrimination claim, against the Water Authority and Stomp in his official capacity, is not sufficiently related to the § 1983 retaliation claim against Stomp in his individual capacity. These claims are "distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434-35. The Court concludes

that these claims are more like the unrelated claims in *Jane L.*; although those claims were challenges to the same Utah Act, the legal theories and substantive issues differed from those relevant to the successful claim. *Jane L.*, 61 F.3d at 1512-13. Since the claims are not "related" or "intertwined," Plaintiff is not eligible for a fully compensatory attorney fee award.

The Court also concludes, however, that there was substantial overlap in testimony and preparation between Plaintiff's successful and unsuccessful claims, because much of the evidence about salaries Plaintiff would have received had he been promoted was relevant to all three claims. Most of the work and time expended was relevant to the successful § 1983 claim. The Court has carefully reviewed Plaintiff's detailed timesheets and concludes that much of Plaintiff's time was spent on activities related to the lawsuit as a whole rather than directed solely at the racial discrimination claim. In addition, the Court concludes that Plaintiff obtained a significant award for lost salary, emotional damages, or both. The total of $280,000 in damages constitutes a significant level of overall relief in relation to the hours expended. *See Hensley*, 461 U.S. at 435 (requiring court to consider significance of overall relief in relation to hours reasonably expended). The Court rejects Defendants' suggestion that there were two major issues in the case—race and religion—and that any award should be reduced by 50% because Plaintiff prevailed on only one claim; Defendants' approach runs counter to the Supreme Court's rejection of "a mathematical approach." *Id.* at 435 n.11. The ratio of number of successful issues to the total number of issues raised "provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* Instead, the Court must make a qualitative assessment of the relative importance of the claims when Plaintiff succeeded only on one claim. *See Jane L.*, 61 F.3d at 1511. The Court concludes that Plaintiff succeeded on a relatively important claim, the First Amendment retaliation claim, and achieved a significant damages award. The most critical

20

factor is the degree of success Plaintiff obtained.  *See Hensley*, 461 U.S. at 436.  Considering all of these factors, the Court concludes that there should be only a 10% reduction for limited success.

The Court believes that this reduction fairly compensates Plaintiff, but does not require Defendants to pay for time which was not directed toward the result obtained.  *See Hensley*, 461 U.S. at 434-35.  The Supreme Court has emphasized that the determination of attorneys' fees "'should not result in a second major litigation.'"  *Fox*, 131 S. Ct. at 2216 (quoting *Hensley*, 461 U.S. at 437).  The district court should not become a "green-eyeshade accountant."  *Id.*  "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."  *Id.*  The district court may take into account its "overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."  *Id.*  "There is no precise rule or formula" for determining what reduction is warranted; the Court may either "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Hensley*, 461 U.S. at 436-37.  The Court takes the latter course in this case in making this "equitable judgment."  *Id.* at 437.

Defendants argue that the Court should not award any attorney fees because Plaintiff failed to separate time spent on each of the three claims.  The Court recognizes that there is caselaw from other circuits holding that a court may award no fees at all if a party's fee request is "outrageously excessive," of if time records are sloppy and imprecise.  *See Case*, 157 F.3d at 1250, 1254 (citing caselaw).  The theory for such punitive rulings is to deter attorneys from making unreasonable demands.  *See id.* at 1254.  The Court concludes that a punitive approach is not warranted on the ground suggested by Defendants; it would not have been wholly

unreasonable for Plaintiff to believe that his claims were sufficiently interrelated and his results substantial, so that a fully compensatory award was warranted.

The lodestar amount of $46,995.00 reduced by 10% for limited success comes to an award of $42,295.50.

## III.  Claimed Expenses

On the "Expense Worksheet," Juarez claims $84.20 in mileage for seven roundtrips to the Albuquerque Courthouse, for a total of $589.40.  At the 2012 IRS allowance of $0.555 per mile, $84.20 represents a charge for 151 miles.  Defendants do not object to this expense.

Yet Juarez's office address is shown as 1822 Lomas Blvd., Albuquerque, at all relevant times:  on 4/23/11 when Juarez took over as Plaintiff's attorney [Doc. No. 28], and on 1/9/13 when Juarez filed his Motion for Attorneys' Fees [Doc. No. 96].  It appears from Plaintiff's "Out-of-Court Hourly Worksheet" and his "Expense Worksheet" that counsel is charging for travel from his home to the Albuquerque Courthouse.   Juarez's billing is inadequate, because it provides no explanation or documentation to support these substantial charges.  *See Flitton v. Primary Residential Mortgage, Inc.*, 614 F.3d 1173, 1180 (10th Cir. 2010) (upholding district court's disallowance of inadequate billing entries).   For "sloppy and imprecise" records, the Court may reduce the award.  *See Jane L.*, 61 F.3d at 1510 ("'Where the documentation of hours is inadequate, the district court may reduce the award accordingly.'" (quoting *Hensley*, 461 U.S. at 433)).  As discussed above, Plaintiff provides no documentation or support that it is customary for an attorney to charge a client for travel from the attorney's home to his office or from home to court, or that such travel time or mileage is otherwise properly allowed.  *See Smith*, 921 F.2d at 1122 (observing that court should consider what travel costs are normally billed to a private client in the locality and whether costs are reasonable).  Plaintiff's counsel has not even presented

his own affidavit on whether he normally charges private clients for such travel expenses.  *See Perdue*, 559 U.S. at 556 (observing that lodestar approach is intended to provide "rough approximation of general billing practices"); *Robinson*, 160 F.3d at 1281 (observing that attorney fee award under § 1988 is intended to compensate in accordance with the market).

Plaintiff had the burden of demonstrating the reasonableness of each dollar and each hour claimed.  *See Jane L.*, 61 F.3d at 1510.  The Court concludes that mileage from Juarez's office to the Albuquerque Courthouse is allowable, but mileage from his home constitutes personal commuting expenses which are not allowed.  There being inadequate support for these claims, the Court concludes that Juarez is only entitled to claim mileage to and from his office to the Albuquerque Courthouse, a distance of 1.2 miles, which comes to $9.30 for seven roundtrips.

The Court will allow a total of $188.40 in expenses:  $9.30 for travel, $22.00 for parking, and $157.10 for copying.

## CONCLUSION

The Court concludes that Plaintiff's request for attorney fees, as altered above, is reasonable.  From Plaintiff's counsel's claim of 257.3 hours, the Court subtracts 36.35 hours:  6 hours of clerical tasks, 5 hours of paralegal tasks, 1 hour to prepare an affidavit never submitted, 3.25 hours of waiting during jury deliberations, and 21.1 hours of travel time.  The Court concludes that the number of hours reasonably expended is 220.95 at the reasonable hourly rate of $210.00.  The lodestar amount is $46,399.50 plus $375.00 for paralegal tasks and $220.50 for travel time, which amounts to $46,995.00.  The Court concludes that a 10% reduction is warranted for limited success, reducing the award for attorney fees to $42,295.50.  The Court allows $188.40 in expenses, for a total award to Plaintiff of $42,483.90.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Attorneys' Fees and Memorandum in Support of Motion for Attorneys Fees* [Doc. No. 96] is **GRANTED IN PART** and **DENIED IN PART** as discussed above.

_____

**UNITED STATES DISTRICT JUDGE**